Graham, Jvdge,
delivered the opinion of the court:
The defendant hired by charter the ship of the plaintiff for a voyage between ports in the United States and South America, paying for its use on a per diem basis. After the expiration of the charter, and in final settlement with the ■plaintiff the defendant claimed and made a deduction for loss of time amounting to 20% hours.
A brief statement of the facts may help to clarify the issue. The delay for which the deduction was made took place between 7 p. m. on August 3, 1918, and 3.45 p. m. on August 4, 1918, and the reason for the delay stipulated and found in the facts was because “ the vessel did not have a full complement of officers and crew.”
The charter provided for “ direct continuation ” of a previous charter with “ no interruption of time between the two charters.” The charter ’required the plaintiff, among other things, to have on ship’s delivery, ready to receive cargo, a “ full complement of officers, seamen, engineers, and firemen for a vessel of her tonnage and to be so maintained during the continuance of this charter party.”
The vessel arrived in Boston on its previous voyage at some date prior to August 3,1918, passed under the control of the defendant at 6 p. m. on said date and was given orders by the defendant to sail at 7 p. m., same date.
During the period between this latter time and the date of arrival a number of the crew; had left the vessel, and at the time fixed for sailing the crew was short, that is, there was a deficiency of two firemen and a donkey man. At 7 p. m. the ship was towed out to the roadstead and anchored, and there it remained until 3.45 p. m. the next day, or 20% hours, awaiting the arrival on board of the two firemen and the *665 donkey man, when the ship sailed for the port of Norfolk, Va., where presumably it was to take on its cargo. In any event this was its destination when it set out. For this delay the Government made the deduction. As stated, the findings show that the reason for the delay was because the ship did not have a full complement of officers and crew.
Who ordered this delay does not directly appear, but, as the ship was under the control of the plaintiff’s officer and had been directed by the defendant to sail at 7 p. m., it must be presumed that it was due to the action of this officer and representative of the plaintiff. Section 17 of the charter provides :
“ That in the event of loss of time from deficiency of men * * * which prevents the working of or the continuance on the voyage of the vessel for twenty-four consecutive hours or more, the payment of hire shall cease from the commencement of the loss of time till she again resume actual service for charterers * *
And further:
“Also, if any loss of time is incurred through fault of ship, after cargo and coals are on board, or cargo discharged and ship ready for sea as far as charterers are concerned and hour of sailing has been fixed by charterers and reasonable notice given to captain, such lost time is to be for steamer’s account.”
It is plain from the first of these provisions that it was intended to apply to such a deficiency of men as operated to either prevent the working of the vessel or the continuance of its voyage for twenty-four consecutive hours or more, which would seem to indicate that where this deficiency had directly operated to prevent the “ continuance of the voyage ” the plaintiff should have twenty-four hours in which to remedy the situation.
However, as the findings show, this was not the situation here, as the vessel could have proceeded to Norfolk without the two firemen and the donkey man. The deficiency was not such as to prevent the continuance of the voyage, and plaintiff, therefore, was not entitled to twenty-four hours *666 within, which to delay the continuance of the voyage and make up the deficiency without being liable for loss of time.
As the first part of section 17 does not apply, the defendant’s case rests upon the application of the second part of the clause above quoted, which provides for a right of deduction for time lost through “ fault of the ship,” which is assumed to mean either from the faulty condition of the ship or its equipment or through the action of those in control of its operation. The delay here was not due to the condition of the ship, and it must have been due, therefore, to the action of those who had control of the operation of the ship, and consequently “ through fault of the ship,” that is, the representative of the plaintiff.
This being true, the plaintiff can not recover, as the provision for plaintiff’s right to delay to supply the “ deficiency ” does not apply under the conditions just stated.
Two other questions have been raised in the case by the defendant, viz, (1) that it has not been shown that a citizen of the United States was, at the time this action was brought, accorded a right to sue in the courts of Denmark, of which country plaintiff was a citizen, and (2) if the claim was one covered by the Suits in Admiralty Act, whether the two-year limitation of that act would apply. In view of the conclusion reached, it is not necessary to decide either of these questions. ' We are inclined, however, to the opinion that the first objection is not well taken.
The measure of loss to the defendant of the 20% hours is the rate of hire named in the contract, and this was the basis of the deduction made by the Government and which made up the sum for the recovery of which this suit was brought.
The petition should be dismissed, and it is so ordered.
SiNNOtt, Judge; GREEN, Judge; Moss, Judge; and Booth, Chief Justice, concur.